UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                 :
ANNAMARIA GIRARDI,                    :
                                 :
                  Plaintiff,       :
                                 :         20-CV-4298 (VSB)20
      - against -               :
                                 :         **OPINION & ORDER**
                                 :
FERRARI EXPRESS, INC. and FABIO  :
RAVERA, *Individually*,               :
                                 :
                  Defendants.  :
                                 :
-------------------------------------------------------X

Appearances:

Brittany Alexandra Stevens
Phillips & Associates, PLLC
New York, NY
*Counsel for Plaintiff*

Rocco Lamura
Tosolini & Lamura LLP
New York, NY

S. Martin Keleti
Tosolini, Lamura, Rasile & Toniutti, LLP
Beverly Hills, CA

*Counsels for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Before me are the motions to dismiss the First Amended Complaint filed by Ferrari Express, Inc., ("Ferrari Express") and Fabio Ravera ("Ravera," together with Ferrari Express, "Defendants"). (Docs. 21, 38.) Because the First Amended Complaint contains sufficient factual allegations to plausibly allege sex and gender discrimination pursuant to Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. Sec 2000e et seq. ("Title VII"), the New York

State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), Defendants' motions to dismiss is DENIED.

## I. Factual Background[1]

Plaintiff is a female former employee of Ferrari Express, a company in the business of jewelry shipping. (FAC ¶¶ 2, 8, 10.)[2] Ferrari Express has locations in New York, Florida, California, as well as overseas. (*Id.* ¶ 10.) Plaintiff began her employment in or around 2002, and was promoted to "Export Manager" in or around September 2015. (*Id.* ¶¶ 16–17.) At all relevant times, Plaintiff worked out of the company's Manhattan location under the supervision of Defendant Ravera, the company's General Manager and Chief Financial Officer ("CFO"). (*Id.* ¶¶ 2, 11, 14.)

In 2018, during their first work meeting, Ravera asked "whether Plaintiff was married," and when she responded "yes," Ravera "stated with disappointment and a sexually suggestive manner that it was 'a shame' that she was married and that he could 'not even try' with her." (*Id.* ¶¶ 22, 24.) On various other occasions, Ravera "complimented Plaintiff's appearance, stated that she was 'not just a pretty face,' touched her hair, and rubbed her ears and shoulders at times when he approached Plaintiff at her working station." (*Id.* ¶ 25.)

In or around May 2019, Plaintiff travelled with Ravera and other employees of Ferrari Express to Las Vegas for a trade show. (*Id.* ¶ 27.) During the trip, Plaintiff accompanied Ravera for "what she thought was a professional work dinner"; however, at the dinner, Ravera "threatened Plaintiff's job security when he stated that he could push a button and anyone from

---

[1] The facts contained in this section are based on the factual allegations set forth in the First Amended Complaint ("Complaint") filed by plaintiff Annamaria Girardi ("Plaintiff"). (Doc. 3.) I assume the allegations the Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "FAC" refers to Plaintiff's First Amended Complaint. (Doc. 20.)

2

the company, including Plaintiff, could be fired, and that luckily for Plaintiff, he liked her."[3] (*Id.* ¶ 28.) "Soon after this threat," Ravera "propositioned Plaintiff for sex by stating '[y]ou know what would be great? If tonight you sleep with me.'" (*Id.* ¶ 29.) Plaintiff immediately refused, but Ravera "insisted and continued trying to convince her to sleep with him by telling her that he had a very open relationship with his girlfriend, who was in Italy, and that Plaintiff's husband did not need to know about it." (*Id.* ¶ 30.) Ravera's "sexual propositions" continued when they returned to their hotel; he "followed Plaintiff to the hotel's elevator and stated 'last chance' in a sexually suggestive manner," which Plaintiff "once again refused." (*Id.* ¶¶ 31, 32.) "Plaintiff felt embarrassed, disgusted and intimidated by her supervisor's unlawful harassment, especially given the fact that he had just threatened her job." (*Id.* ¶ 33)

Soon after, a team of Ferrari Express employees drove from Las Vegas to Los Angeles; Plaintiff "volunteered to drive and [Ravera] sat in the passenger seat, with two additional coworkers of theirs sitting in the back." (*Id.* ¶ 34.) During the drive, Ravera "started touching Plaintiff's arm and caressing her hand. Plaintiff would continuously take her hand away but [Ravera] would do it again." (*Id.* ¶ 35.)

On another occasion during the summer of 2019, Ravera saw Plaintiff was eating and commented "I see you're stressed out. I hope you don't stress-eat and gain weight." (*Id.* ¶ 37.)

In or around August 2019, Plaintiff and Ravera travelled to New Jersey for a business meeting with a new client. (*Id.* ¶ 39.) During the meeting, Ravera "aggressively cut her off while she was in the middle of speaking and openly embarrassed her in front of the new client's representatives." (*Id.* ¶ 40.) On their way back from the meeting, Ravera again propositioned

---

[3] Plaintiff states that at all relevant times, Ravera was her supervisor or had supervisory authority over her, and that he had the authority to hire, fire, affect the terms and conditions of her employment, or influence the decisionmaker concerning her employment. (*Id.* ¶ 14.)

3

Plaintiff by saying suggestively "You know what I think is a good idea?  If you come to my place in Long Island City." (*Id.* ¶ 41.)  During the drive back from New Jersey, Plaintiff asked Ravera to turn on the air conditioner, Ravera responded "'No, I like it sweaty,' in a sexually suggestive manner." (*Id.* ¶ 42.)

On or about September 6, 2019, feeling that she could no longer endure such work environment and "had no other choice but to resign from her position" at Ferrari Express, and on that same day Ravera again "rubbed Plaintiff's ears and shoulders in a sexually inappropriate manner". (*Id.* ¶ 44.)  On September 9, 2019, Plaintiff informed the President of Ferrari Express, Dino Ferrari, about the "the sexual harassment that she had been experiencing while working" at Ferrari Express.  (*Id.* ¶ 49.)  However, Ravera's actions "were not investigated or reprimanded in any way and he has been allowed to continue at his position with [Ferrari Express] until the end of his previously agreed upon term." (*Id.* ¶ 50.)  When she resigned from Ferrari Express, Plaintiff was the company's only female manager in the United States.  (*Id.* ¶ 21.)

On December 10, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and received a Notice of Right to Sue on May 1, 2020. (*Id.* ¶ 7.)  She subsequently filed a complaint with this Court on June 5, 2020, (Doc. 1), and mailed the copies of the complaint to the New York City Commission of Human Rights and the Office of the Corporate Counsel of the City of New York.  (*Id.*)  Plaintiff alleges sex discrimination and harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), against Ferrari Express, (*id.* ¶¶ 56–59), as well as sex discrimination and harassment under the NYSHRL, and gender discrimination under the NYCHRL against both Defendants, (*id.* ¶¶ 60–65).

4

**II.     Procedural History**

Plaintiff filed her initial complaint on June 5, 2020, and filed her First Amended Complaint on the same day.  (Docs. 1, 3.)  On July 28, 2020, Ferrari Express filed its motion to dismiss the First Amended Complaint, including supporting documents.  (Docs. 11–13.)  On August 12, 2020, Ferrari Express filed an amended motion to dismiss the First Amended Complaint under the Federal Rule of Civil Procedure 12(b)(6), as well as supporting documents.  (Docs. 21–23.)  Plaintiff filed her opposition to Ferrari Express's motion on August 27, 2020.  (Doc. 24.)  Ferrari Express filed its reply on September 10, 2020.  (Doc. 31.)  Because Ravera had since moved to Italy, I granted Plaintiff an extension to serve him.  (Doc. 30.)  Ravera was served on September 28, 2020, (Doc. 36), and filed his motion to dismiss under Rule 12(b)(6) and supporting documents on October 19, 2020, (Docs. 38–40.)  Plaintiff filed her opposition to Ravera's motion to dismiss on November 9, 2020, and sought leave to amend her complaint to include aiding and abetting causes of action against Ravera under the NYSHRL and the NYCHRL.  (Doc. 41.)  Ravera filed his reply on November 16, 2020.  (Doc. 42.)

**III.    Applicable Law**

**A.  *Leave to Amend Complaint***

District Courts have "broad discretion in determining whether to grant leave to amend." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  "[L]eave to amend should be freely granted when 'justice so requires.'"  *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); *see Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules.")  (citation omitted.)  A court may properly deny leave to amend "if

the proposed claim could not withstand a motion to dismiss." *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Parties opposing a motion to amend "bear[] the burden of establishing that an amendment would be futile." *Bonsey v. Kates*, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013).

### B. *Motions to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation omitted). In a discrimination case, "[t]he facts required by *Iqbal* to be alleged in the complaint . . . need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Lastly, "when matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted). "Federal courts have complete discretion" in determining whether to exclude material beyond the pleadings or to convert a motion to dismiss into a motion for summary judgment. *Kouakou v. Fideliscare N.Y.*, 920 F.Supp.2d 391, 396 (S.D.N.Y.2012).

### C. *The Discrimination Claims*

#### 1. NYSHRL & Title VII of the Civil Rights Act of 1964

In relevant part, Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex . . . " 42 U.S.C. § 2000e–2(a)(1). The statutory scheme of Title VII only permits recovery against an employer-entity—individuals may not be held personally liable under Title VII. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 n.8 (2d Cir. 2006)

Similarly, Section 296(1) of the NYSHRL renders it unlawful "[f]or an employer . . . because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Prior to 2019, New York courts required the same standard of proof for sexual harassment claims brought under the NYSHRL as those brought under Title VII, NYSHRL claims were therefore analyzed in the same manner as Title VII claims. *See Patane v. Clark*, 435 F. Supp. 2d 306, 314 (S.D.N.Y. 2006), *aff'd in part, rev'd in*

*part and remanded,* 508 F.3d 106 (2d Cir. 2007); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003).

The New York Legislature amended the NYSHRL in 2019, directing courts to construe the NYSHRL liberally, even if "federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article" have been construed narrowly. *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (quoting *Deveaux v. Skechers USA, Inc.*, No. 19-cv-9734 (DLC), 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020)). The amendment took effect on the signing date, August 12, 2019, although other parts of the omnibus bill containing the amendment took effect on October 11, 2019. *See* S. 6577, 242d Leg. § 16 (N.Y. 2019). The amendment made the standard for sustaining claims under the NYSHRL "closer to the standard" under the NYCHRL. *See Wellner v. Montefiore Med. Ctr.*, No. 17 CIV. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also,* A8421/S6577 (as amended by S6594/A8424). However, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019. *Id.*

To plead a hostile work environment claim against an individual, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn,* 795 F.3d at 320. The facts should suggest conduct that "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane,* 508 F.3d at 113 (internal quotation marks omitted). To survive dismissal, Plaintiff need only plead facts sufficient to support the conclusion that she was faced with "harassment . .

. of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." *Id.* (internal quotation marks omitted). The Second Circuit has "cautioned against setting the bar too high" for hostile work environment claims. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

To impute liability under a hostile environment theory to the employer, a plaintiff must establish a "specific basis for imputing the conduct creating the hostile work environment to the employer." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks omitted). Where the harasser is a supervisor, an individual "empowered to take tangible employment actions against the victim," and "the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Vance v. Ball State Univ.*, 570 U.S. 421, 424(2013). However, where the harasser is merely a co-worker with no supervisory power over the plaintiff, "the employer is liable only if it was negligent in controlling working conditions." *Id.*

Alternatively, plaintiffs may plead a quid pro quo theory of sexual harassment. Quid pro quo sexual harassment occurs when "submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual." *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994), quoting 29 C.F.R. § 1604.11(a)(2) (1993). To establish a prima facie case of quid pro quo harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment. *Karibian,* 14 F.3d at777 (2d Cir. 1994). A quid pro quo claim is made out when an employee rejects sexual advances and suffers adverse employment consequences or submits to the advances in order to avoid those consequences. *See Bouveng v.*

9

*NYG Cap. LLC*, 175 F. Supp. 3d 280, 311 (S.D.N.Y. 2016). Because the harasser, by definition, wields the employer's authority to alter the terms and conditions of employment – either actually or apparently, employers are strictly liable for quid pro quo harassment committed by supervisors. *See Perks*, 251 F.Supp.2d at 1155; *see also, Karibian,* 14 F.3d at 777.

### 2. NYCHRL

"The NYCHRL's standards for liability for sexual harassment are more permissive than those of the NYSHRL and Title VII." *McHenry v. Fox News Network*, LLC, 510 F. Supp. 3d 51, 65 (S.D.N.Y. 2020). Unlike Title VII or the NYSHRL, the NYCHRL does not require a plaintiff claiming sexual harassment to prove that the conduct was severe and pervasive, instead it requires only that the plaintiff demonstrate she was subjected to "unwanted gender-based conduct." *Erasmus v. Deutsche Bank Americas Holding Corp*., No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (internal quotation marks omitted). The plaintiff "need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Mihalik*, 715 F.3d at 110 (quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78, 872 N.Y.S.2d 27, 39 (2009)). However, "district courts must be mindful that the NYCHRL is not a 'general civility code.'" *Id*. (quoting *Williams*, 61 A.D.3d at 76).

## IV. Discussion

The First Amended Complaint brings claims against Individual Defendant Ravera for gender discrimination and harassment under the NYCHRL, and sex discrimination and sexual harassment under the NYSHRL, and claims against Defendant Ferrari Express for sex discrimination under Title VII, for gender discrimination and harassment under the NYCHRL, and sex discrimination and sexual harassment under the NYSHRL.

I first address Plaintiff's Leave to Amend the Complaint and the admissibility of extrinsic evidence presented by Defendants in their motion to dismiss. I then turn to Plaintiff's sex and gender discrimination claims.

### A. *Leave to Amend the Complaint*

Plaintiff requests leave to amend her complaint to add aiding and abetting causes of action against Defendant Ravera under the NYSHRL and the NYCHRL. She points out that individual liability is allowed under both State and City law, explains that aiding and abetting violations provide a broader basis for liability, and cites caselaw from this district demonstrating that individual defendants who participate in discriminatory conduct who lack the authority to hire or fire the plaintiff have been held liable under the NYSHRL's aiding and abetting statutes. Given that Defendant has not opposed this request, and the Second Circuit's ruling that leave to amend "should be freely granted" when justice so requires, Plaintiff's request for leave to amend her complaint is GRANTED.

### B. *Admissibility of Extrinsic Documents by Defendants*

As an initial matter, I note that Defendants attached two documents to their motion to dismiss: (1) a copy of Plaintiff's WhatsApp text messages and, (2) July 10, 2020 Affidavit of Dino Ferrari. (Doc. 23.) These documents were not attached or referenced in the First Amended Complaint such that they could be considered integral to the First Amended Complaint and considered with regard to Defendants' motion to dismiss. (Doc. 3.) Rather, Defendants use these documents to supplement their opposition arguments. Before proceeding to the merits of their argument, I must first address whether to consider these materials in adjudicating this motion.

I decline the Defendants' invitation to use evidence beyond the four corners of the

Complaint. These documents were attached to both Defendants Ferrari Express and Fabio Ravera's motions to dismiss a complaint for failure to state a claim. (Docs. 23, 40.) It appears that Defendants attached these documents for the purpose of refuting facts alleged in the Complaint. Credibility assessments and weighing of evidence is not appropriate on a motion to dismiss at this stage of the litigation. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.") At this early stage, I only have to assess the plausibility of the legal theories in the Complaint based upon the facts alleged in the Complaint, and not the veracity of Plaintiff's allegations.

Moreover, consideration of materials outside of the pleadings would require me to treat this motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. *Id.* The lack of discovery or fact-finding at this stage of litigation makes summary judgment inappropriate at this time. For these reasons, I will not consider the evidence offered by Defendants in their motion to dismiss.

### C. *NYSHRL and NYCHRL Gender Discrimination Claims against Defendant Ravera*

I now turn to Plaintiff's claims against Defendant Ravera under the NYSHRL[4] and the NYCHRL. As stated above, Plaintiff alleges that Defendant Ravera harassed and discriminated against her on the basis of her gender and sex through sexual harassment. She pleads both the hostile work environment and quid pro quo theories of sexual harassment. I address each in turn.

#### 1. Hostile Work Environment

Plaintiff alleges that Defendant Ravera continuously sexually harassed her in violation of

---

[4] As stated above, the amendment to the NYSHRL took effect on October 2019 and only applies to claims that accrue on or after the effective date of October 11, 2019. As all of the conduct that Plaintiff alleges occurred before the effective date, I will apply the pre-amendment NYSHRL standard to all NYSHRL claims pled in the Complaint.

12

the NYSHRL and NYCHRL.  She alleges a sustained campaign of unwanted sexual advances and touches by Ravera.  According to the complaint, Ravera's misconduct started from their very first meeting, and escalated with multiple verbal propositions to Plaintiff for sex and suggestive, unwanted, touching of Plaintiff both when they were alone and in front of other employees.  (FAC ¶¶ 25, 35, 44.)  Plaintiff alleges that Defendant Ravera continued his sexual overtures, despite multiple rejections and her protests.

Construing the facts in the pleading as true, I find that Plaintiff has stated a claim for hostile work environment.  These facts suggest harassment "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Pantane*, 508 F.3d at 113.  Other courts in this circuit have found that alleging a continuous pattern of overt and unwanted solicitation of sexual intercourse can sustain a hostile work environment claim.  *See, e.g.*, *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 388 (E.D.N.Y. 2018); *Conforti v. Sunbelt Rentals, Inc.*, 201 F.Supp.3d 278, 305–06 (E.D.N.Y. 2016).  In addition, other courts have rejected motions to dismiss hostile work environment claims where Plaintiff claimed that the Defendant subjected her to unwanted touching of a sexual nature in the workplace.  *See, e.g, Parra v. City of White Plains,* 48 F. Supp. 3d 542, 547, 552 (S.D.N.Y. 2014) (finding that plaintiff's allegations that defendant subjected her to unwanted sexual touching, including rubbing her hands, arms, shoulders, neck, feet, head and hair were sufficient to plead a hostile work environment); *Johnson v. J. Walter Thompson U.S.A., LLC,* 224 F. Supp. 3d 296, 308 (S.D.N.Y. 2016) (finding that plaintiff's allegations that defendant subjected her to unwanted sexual touching, including rubbing her shoulders and stroking her face, were sufficient to plead a hostile work environment).  Here, the Complaint contains multiple allegations of sexual misconduct — regular and continued unwelcome sexual advances, and unwanted

touching of a sexual nature.  Defendant Ravera's conduct can reasonably be construed to contribute to an overall environment of gender hostility.  *See Terry*, 336 F.3d at 148 ("In determining whether a hostile environment exists, we must look at the 'totality of the circumstances.'").  For this reason, I find that the Plaintiff has also plausibly alleged a hostile work environment claim.

### 2.  Quid Pro Quo

Plaintiff alleges that Defendant Ravera also tied his sexual advances towards the Plaintiff to threats of her job security.  Specifically, Plaintiff alleges that on May 31, 2019, Ravera said "he could push a button and anyone from the company, including Plaintiff, could be fired, and that luckily for Plaintiff, he liked her," (FAC ¶ 28), and then followed up by stating "You know what would be great?  If tonight you sleep with me," (*id*. ¶¶ 28–29.)  Plaintiff immediately refused, but Ravera persisted and continued to try and "convince her to sleep with him" throughout that night.  (*Id*. ¶¶ 31–33.)  Plaintiff resigned from her job on September 6, 2019 as a result of Defendants' ongoing harassment.  (*Id*. ¶¶ 44–45.)

Although the Second Circuit has yet to definitively address the issue, other circuits have held that a constructive discharge is not a sufficiently tangible employment action to serve as the basis for a quid pro quo cause of action.  *Clarke v. Pacifica Found*., No. 07 CV 4605 FB, 2011 WL 4356085, at *13 (E.D.N.Y. Sept. 16, 2011); *see, e.g., Rogers v. City County Health Dep't of Okla. County*, 30 Fed. Appx. 883, 888 n. 2 (10th Cir.2002) (holding that a Plaintiff "cannot survive summary judgment on her quid pro quo claim based on a constructive discharge theory."); *Bonenberger v. Plymouth Twp*., 132 F.3d 20, 28 (3d Cir. 1997) (holding that "constructive discharge cannot form the basis for quid pro quo sexual harassment").  Therefore, I find that Plaintiff has not plausibly alleged quid pro quo sexual harassment.

However, since Plaintiff need only plead sufficient facts to advance a theory of hostile workplace or of quid pro quo harassment for her workplace discrimination claim to survive, Plaintiff's failure to plead a quid pro quo theory does not doom her claim. Because Plaintiff has pled sufficient facts regarding Ravera's sexual misconduct for me to conclude that there was an overall environment of gender hostility, I find that she has plausibly alleged a sexual harassment/gender discrimination claim under the NYCHRL and NYSHRL.

For these reasons, Defendants' motion to dismiss the claims against Defendant Ravera is DENIED.

### D. *NYSHRL, NYCHRL, and TITLE VII Claims against Defendant Ferrari Express*

The Complaint asserts claims against Ferrari Express for employment discrimination on the basis of sex discrimination and sexual harassment, for gender discrimination and harassment under the NYCHRL and sex discrimination and sexual harassment under the NYSHRL.

I have already determined that Plaintiff has sufficiently plead employment discrimination through sexual harassment under the NYCHRL against Defendant Ravera. Specifically, Plaintiff plausibly alleges that Ravera was her supervisor and/or had supervisory authority over Plaintiff, and that he had the authority to hire, fire, and affect the terms and conditions of her employment or influence the decisionmaker to do so; therefore, Plaintiff has adequately alleged that Defendant Ravera is a "supervisor" for the purposes of establishing employer liability. *See Vance*, 570 U.S. at 424. She has also alleged that the harassment ultimately culminated in her constructive termination. Therefore, this renders Ferrari Express automatically liable under Title VII, and thus also the NYSHRL. *See id.*; *Pantane*, 508 F.3d at 113.

Similarly, as the NYCHRL imposes liability on the employer where the offending employee "exercised managerial or supervisory responsibility" and has even broader protections

for employees than the NYSHRL and Title VII, I find that Ferrari Express is also liable under the NYCHRL. *See Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010).

For these reasons, Defendants' motion to dismiss the claims against Ferrari Express is DENIED.

### V.     Conclusion

For the reasons stated above, Defendants' motions to dismiss are DENIED, and Plaintiff's motion for Leave to Amend the Pleadings is GRANTED. The Clerk of Court is respectfully requested to terminate the motions at dockets 13, 21, and 38. Plaintiff is ORDERED to file a second amended complaint by April 14, 2023, and Defendants are ORDERED to file their answers to the second amended complaint by April 28, 2023.

SO ORDERED.

Dated: March 31, 2023
       New York, New York

*[signature: Vernon Broderick]*

　　　　　　　　　　　Vernon S. Broderick
　　　　　　　　　　　United States District Judge